In the Matter of the Estate of JOSEPH PULITZER, Deceased.

Surrogate's Court, New York County, June 10, 1933.

*Jackson, Fuller, Nash & Brophy*, for the trustees.

*Charles K. Beekman*, for John G. Jackson, as administrator of the estate of Margaret Pulitzer, deceased.

*O'Brien, Boardman, Conboy, Memhard & Early*, for Kenneth O'Brien, special guardian.

FOLEY, S. This proceeding is brought for the judicial settlement of the account of the trustees of the residuary estate created by the will of the testator. In a prior accounting proceeding by the trustees in this estate I construed the will as to the effect of certain provisions of the so-called " Newspaper Trust " (*Matter of Pulitzer*, 139 Misc. 575; 140 id. 572; both affd., 237 App. Div. 808). In this proceeding a construction of the will, as modified by the codicil, is requested with respect to the distribution of the income of the residuary trust. The testator gave, devised and bequeathed the

rest, residue and remainder of his estate to his executors and trustees, " to hold in trust during the lives of my two youngest grandchildren living at the time of my death, or if there be only one grandchild living, then during the lives of such grandchild and of my son Herbert, or if he be not living, my daughter Constance, or if no grandchild survive me, then during the lives of my two youngest children surviving me, the net income to be paid to my grandchildren, male or female, surviving at any time during the continuance of said trust, share and share alike, or if any be a minor, his or her share shall be held, applied or accumulated for the use and benefit of such minor until the termination of his or her minority, and any accumulation shall then be paid over to him or her. Upon and after the termination of said ' trust term ' the principal of my said residuary estate shall be divided and distributed among my grandchildren then living, male or female, share and share alike, or the issue of any deceased grandchild, *per stirpes* and not *per capita*, but if there be no such grandchild or issue thereof then living, the principal shall be transferred and paid over to my sons and daughters then living, share and share alike, or to the survivor."

Joseph Pulitzer was survived by his two grandchildren, Ralph Pulitzer, Jr., and Seward Webb Pulitzer, both of whom are still living. Under the terms of the will the duration of the trust is measured by their lives. Subsequent to the testator's death, sixteen grandchildren were born. One of them, Margaret Pulitzer, died on July 7, 1930, at the age of one year and four months. An administrator of her estate was appointed, who has appeared herein and filed an answer objecting to the distribution proposed by the trustees. By reason of her death, the question of construction arose. The questions to be determined are as follows: Is the net income of the trust to be equally divided among the testator's grandchildren living, from time to time, during the trust term? Or is each grandchild living at the testator's death or born subsequent thereto, vested with an indefeasible interest in a proportionate share of the income during the continuance of the trust, subject to a decrease in such proportionate share by the birth of other grandchildren? Under the former interpretation, the income would be divided equally among the present living grandchildren. Under the latter, the estate of the deceased grandchild would be included as a beneficiary of a proportionate part of the income.

I hold that the testator clearly intended to give the income of the residuary trust in equal shares to his grandchildren who are in being within the term of the trust, but with the right to participate only during their respective lives. In other words, only living grandchildren may at any time share in the income. The language

of the will is clear and explicit. It is unnecessary to resort to canons of construction or rules of law to determine his intention where it is expressed in the testator's own words (*Matter of Buechner*, 226 N. Y. 440.) Under the language employed, the income is to be paid to those grandchildren of the testator, male or female, " surviving at any time during the continuance of said trust." These words plainly indicate the necessity for the continued existence of the grandchild during the trust period to entitle him or her to participate in the income. The gift of the income is to a class and is contingent upon the continued survivorship of the members of that class during the continuance of the trust.

The contingent nature of the gift of the income is further emphasized by the gift of the remainder, which is also contingent and limited to the grandchildren surviving the termination of the trust or to the issue of deceased grandchildren. The testator's fixed and definite purpose was to confine the beneficiaries of the income to those of his blood, and to the exclusion of strangers to the blood. The general plan of distribution found in the will, and the language of other provisions thereof, emphasize such intention. It is significant as bearing upon this purpose that, in respect to the income of the " Newspaper Trust " created for the benefit of his own sons, he made specific provision, in the event of the death of a son before the expiration of the trust term, for the payment over of the income to the *male* descendants of his deceased sons. In paragraph III, article sixth of the first codicil to his will, he directed: " If any son surviving me shall die before the expiration of the ' trust term,' the shares of stock of said Companies held for the benefit of such son shall continue to be held during the ' trust term ' and the income therefrom shall be paid to his surviving male descendants *per stirpes* and not *per capita*, or in default of such male descendants to my then surviving son or sons and to the male descendants of any son then deceased *per stirpes* and not *per capita*."

No specific provision for payment over of the income previously paid to a grandchild, who had died during the trust term, is contained in the residuary paragraph which is in controversy here. But under the plan of distribution of the testator, upon the death of a grandchild, his share of the income is again to be equally divided among the surviving grandchildren. If the construction proposed by the administrator of the deceased grandchild's estate were upheld, a complicated system of distribution of the income, not contemplated by the testator, might result. The present ages of the grandsons, by whose lives the trust term is measured, are respectively twenty-six and twenty-one years. It may, therefore,

be many years before the trust finally comes to an end. In the meantime the income might be scattered among various persons who are strangers to the blood of the testator and not within the intended class of beneficiaries. The share of income of a grandchild dying before the termination of the trust might pass as intestate property to his surviving spouse. If competent to make a will, it might also pass under a testamentary disposition to legatees not of the blood of the testator and not even members of the family of the deceased grandchild. It might be willed to various charities, despite the fact that the testator has already made generous provisions in his own will to charitable corporations and for charitable purposes. The death of a surviving spouse of a deceased grandchild, or the death of a legatee under the will of a deceased grandchild during the trust period, might still further scatter the income among legatees who might be entire strangers to the testator and to his family. This result clearly was never within the contemplation of the testator.

The administrator would reconstruct this will by attempting to write into the will, *first,* a power of appointment for grandchildren during the period of the trust, or, *second,* a gift to issue of grandchildren who might die during the term of the trust. Neither of these provisions, either expressly or by implication, can be found in the clause to be construed.

It is, however, urged by the administrator of the deceased grandchild's estate that if the trust continued for a long period of time, the entire income might eventually be payable to a sole surviving grandchild, to the exclusion of the issue of grandchildren who may have died during the trust period. This contention finds its answer in the expressed intention of the testator to favor his grandchildren, whether they be many or one only.

The authorities cited by the administrator of the deceased grandchild are not applicable to the situation here. In each of these cases the class of persons entitled to receive the income of the trusts was fixed and ascertainable at the death of the testator. In *Cammann* v. *Bailey* (210 N. Y. 19) the balance of the income of the trust there created was to be divided " into as many equal shares as I shall leave *children* or descendants of children." The death of the testator fixed the time for the ascertainment of the class of his children or their issue as beneficiaries of the income and the vesting of their interests therein. In *Gwyer* v. *Gwyer* (5 App. Div. 156; affd., 160 N. Y. 659) the income was to be divided equally between the testator's *children.* Necessarily, the children intended were those who survived the testator, and their interests became vested at his death. In *Baker* v. *Gerow* (126

N. Y. Supp. 277) the gift of the income was to a named son, with no disposition over upon his death before the termination of the trust. The bequest of the income was held to be vested at the death of the testator. Here the number of beneficiaries of income fluctuates, depending upon the birth and death of grandchildren during the trust period.

Submit decree on notice construing the will and settling the account accordingly.