■ In the Matter of the Estate of JOSEPH ROTH, Deceased. JOSEPH ROTH, as Executor of JOSEPH ROTH, Deceased, Appellant-Respondent; EVELYN R. FINKELSTEIN et al., Respondents-Appellants.

*Per Curiam.* In this accounting proceeding by one of four executors of the estate of Joseph Roth, deceased, covering a period of approximately six years of a gross estate valued at decedent's death at $671,920.81 and which with appreciation in value and income earned totalled $1,025,402.81, there was allowed to the accounting-executor-appellant total commissions of $8,764.55.

Objection was sustained to the payment of commissions on shares of stock owned by the deceased in an automobile dealership, Yonkers Motors Corp., because the shares allegedly passed as specific legacies. These shares constituted the major asset of the deceased passing under his will and were ultimately valued for tax purposes at over half a million dollars.

It is clear from the provisions of the will of Joseph Roth that the shares of Yonkers Motors stock were not the subject of specific legacies. The testator did not use the traditional language of a specific legacy of stock. He gave and bequeathed " to my children   *   *   *   such of the shares of corporate stock of Yonkers Motors Corp. as may be owned by my estate after the payment of the obligations of my estate ". Moreover, unlike the situation where a specific legacy may be resorted to when other assets of the estate prove insufficient to meet expenses, the testator directed that this stock in the first instance be used to satisfy taxes and other liabilities. And, in the event the number of shares required to be sold would leave an insufficient number to realize the desired division of ownership, the deceased provided how distribution was to be made.

Furthermore, in determining whether an executor is entitled to be paid commissions for services rendered, the test, it has been said, seems to be whether or not the will requires the executor to perform regular executorial duties with respect to the property. In the case of the Yonkers Motors shares, the executors had to and did exercise executorial responsibility in regard to these shares. The executors, and particularly the appellant certified public accountant who was responsible for the estate administration, had to decide whether to sell this asset or any part thereof, they collected and used the income thereon, filed papers with reference thereto, and claimed that the estate was the owner thereof and accordingly entitled to certain tax advantages. The felicitous administration of the estate by the appellant, an estate faced with tax liabilities which exceeded its assets, resulted in the preservation of the Yonkers Motors stock for distribution to Mr. Roth's children. Ownership of the automobile business was thus continued in the deceased's family as was his intent, while the estate was enabled to satisfy its large obligations. It must be observed further that Yonkers Motors paid the estate the income earned on these shares and that the appellant has been allowed commissions on this income without objection.

As with the income earned on the shares, so too must commissions be paid upon the principal value of the shares themselves.

Concerning the cross appeal in part of the objectants as to the amount of the allowance to the appellant's attorneys for services rendered *on the accounting*, it is noted that the estate had already paid $15,000 in attorney's fees in connection with its administration. In the circumstances, considering the nature and extent of these services rendered primarily to the accountant, we find that the award of $3,500 is excessive and said sum is reduced to $1,500, plus disbursements.

Decree entered in the Surrogate's Court, New York County, should be modified on the law, on the facts and in the exercise of discretion, by overruling the objections to the payment of commissions on the stock of Yonkers Motors Corp. and by awarding commissions thereon in the amount of $7,854, and by decreasing the fee for legal services rendered on the accounting to $1,500, plus disbursements, and, as so modified, the decree should be affirmed, with $50 costs and disbursements to all parties filing briefs, payable out of the estate.

McGIVERN, J. (dissenting). I dissent and would affirm the Surrogate in all respects. The intent of the testator, to effect merely a transfer of his Yonkers Motors Corp. stock to his immediate family, clearly envisaged a specific legacy. As such, the executors were not entitled to a commission on this stock. (See former Surrogate's Ct. Act, § 285 [now SCPA § 2307], also §§ 218, 214; *Blood* v. *Kane,* 130 N. Y. 514, 517; *Matter of Columbia Trust Co.,* 186 App. Div. 377, 381.)

Similarly, I find no cause to alter the fees allowed the attorneys. The total estate was over a million. The attorneys who handled the administration of the estate were commensurately compensated. The accounting period extended from 1957 to 1966, and the attorneys credibly spent 198 hours on their tasks. The Surrogate has already reduced the requested allowance from $5,000 to $3,500. A further reduction would be unnecessarily trenchant, unrealistic and not warranted.

Steuer, J. P., Capozzoli, Tilzer and McNally, JJ., concur in *Per Curiam* opinion; McGivern, J., dissents in opinion.

Decree so far as appealed from modified, on the law, on the facts and in the exercise of discretion, by overruling the objections to the payment of commissions on the stock of Yonkers Motors Corp. and by awarding commissions thereon in the amount of $7,854, and by decreasing the fee for legal services rendered on the accounting to $1,500, plus disbursements, and, as so modified, affirmed, with $50 costs and disbursements to all parties filing briefs, payable out of the estate. [53 Misc 2d 1066.]