Millard L. Midomck, S.
The report of the guardian ad litem for infant remaindermen of the residuary trusts makes certain recommendations, some of which are in reality objections to the account. The objection to the valuation of assets for commission purposes is sustained. The property transferred to the executors by the trustees under the deed of trust should be valued as of the date of transfer.
A trust which the decedent had created provided for a pour-over to the decedent’s estate. The decedent died on June 8, 1968. Letters were issued to three executors, two of whom were also trustees under the deed of trust. Understandably, some time was required for the trustees to prepare their account and transfer property to the executors. The shares of stock and some bonds were transferred on March 28, 1969; United States bonds, on May 15,1969 and most of the other bonds, on September 30, 1968. The guardian points out that the trustees computed their paying commissions on values as of the dates of transfer to the executors, but the executors herein computed their receiving commissions on valuations as of the date of the decedent’s death, which were more than $200,000 greater than the values on the dates the funds were received.
The commission statute (SOPA 2307) speaks of the receipt of “ sums of money ”, but it provides that the value of any property, “ to be determined in such manner as directed by the court * * * shall be considered as money in computing commissions ” (subd. 2). Receiving commissions are to be based upon the value of assets at the time of their receipt, and paying commissions are computed on values as of the dates of payment. In practical operation, there has to be a time lapse between the date of the decedent’s death and the date on which the fiduciaries qualify and receive letters. Generally speaking, the personal representatives of a decedent receive assets that were in the decedent’s name and possession on the day that they receive letters. Some property may actually be received earlier because executors have authority, prior to letters, ‘1 to take such action as is necessary to preserve [property] ” (EPTL 11-1.3), and some property may require immediate executorial action for its preservation. Other assets may require executorial action before they can be collected, and they are deemed received when they are collected.
As a matter of convenience and in the interest of avoiding additional expense, it has become customary for the Surrogates to accept the values fixed in the estate tax proceeding as the valuations for fixing receiving commissions on assets that fall *245 immediately to the fiduciaries. (Matter of Hoff, 186 Misc. 684, 686, affd. 270 App. Div. 891, affd. 296 N. Y. 650; Matter of Baldwin, 157 Misc. 692, 697, affd. 250 App. Div. 767; Matter of Sheinman, 52 Misc 2d 220, 230.) Generally the differences in valuations between date of death and date of receipt are relatively small, and any increase in receiving commissions by such valuation may be offset by the savihg of the expense of additional appraisals and the expense of litigation over valuations. In the pending case, however, the property in issue was not property owned by the decedent at the time of her death, but rather property which would be transferable to her executors after her death. It is property that had to be collected by the executors and would be subject to commissions only if collected, and only to the extent collected. Like all other property which the executors must proceed to collect, the value of the property, when collected, is the base for receiving commissions. It is also the value at which the executors are charged in their accounts and the value for which they are responsible. The commissions must, therefore, be recomputed.
The guardian ad litem also objects to charging the estate with the costs and expenses of the ancillary probate of the will and ancillary administration of property in Connecticut. It is conceded that the only property in Connecticut was real property, consisting of land and a summer residence, which was specifically devised to decedent’s daughter, and any tangible property that was contained therein. The decedent specifically bequeathed to her daughter all jewelry, clothing, furs, personal effects, furniture, silver, china, paintings and all household effects. Presumably some of the specifically bequeathed property was located in the summer residence. The guardian recommends that the executors be directed to obtain repayment from the daughter of approximately $12,547.85, representing payments made from the New York estate in connection with the ancillary proceedings. This sum includes probate fees, appraisals, legal fees, commissions and other charges allocable to the realty. The issue is submitted to the court as a question of law, but a more precise identification of figures is necessary before the court can make a definitive determination of the sum properly credited to the executors in their account and the amount improperly credited. A discussion of the applicable principles may assist the parties in an adjustment of the figures.
Subject to constitutional limitations, each State has the power to determine the disposition of a decedent’s property within its borders. (Riley v. New York Trust Co., 315 U. S. 343, 349.) An *246 ancillary representative is an officer of the jurisdiction in which he is appointed. He is accountable only to the court where appointed, and he cannot be required to account for his administration by the courts of any other jurisdiction. The title of an ancillary representative extends only to property which is within the jurisdiction of his appointment, and he has no authority over assets elsewhere.
The State of Connecticut has exclusive jurisdiction over real property located there. It has jurisdiction to supervise and direct the administration of personal property within its borders. Its decrees governing disposition of property by a representative therein appointed cannot be disturbed by this court. However, the court in Connecticut cannot make directions respecting property located within the State of New York, the domicile of the decedent.
The appointment by a testator of an executor confers upon the person named a right, and in a sense, imposes something akin to a moral obligation, to offer the will of the decedent for probate. That responsibility extends to the jurisdiction or jurisdictions in which property of the decedent is located. An executor who, in good faith, offers a will for probate, is entitled to reimbursement for his necessary expenses in proving the will. (SCPA 2302, subd. 3, par. [a].) Hence the executors named in the decedent’s will were justified in presenting the will for probate at the domicile and in the place where other property of the decedent was located, and the executors are entitled to reimbursement or exoneration of liability for counsel fees necessarily incurred in proving the will.
The cost of administering the personal assets of the decedent is an expense that must be imposed upon the property being administered. Any attorneys’ fees involved in the settlement of an account of such property should be payable from such property. Any commissions awarded by the court in Connecticut are payable out of the property there administered. Under New York law commissions would not be payable on real property specifically devised nor on personal property specifically bequeathed. Thus under New York law there would be no commissions on property of a character such as that in Connecticut. The courts of Connecticut are, of course, governed by the laws of that State, and whatever property is subject to commissions under Connecticut law must bear the burden of such commissions. A court in the ancillary jurisdiction cannot impose that expense upon property in another jurisdiction.
The personal representatives of a decedent take only a qualified title to assets specifically bequeathed, and when they assent *247 to the specific legatee taking possession, his title becomes full and complete. (Blood v. Kane, 130 N. Y. 514, 517.) The executors have no obligation to collect the property for the specific legatee. The specific legatee must put himself in possession of the property when his title has been completed by the assent of the executors. (Matter of Columbia Trust Co., 186 App. Div. 377, 380.) A specific legatee or devisee is entitled to the profits produced by the property after the death of the decedent and is also liable for all expenses incurred in operating and maintaining the property thereafter.
The court accordingly holds that the commissions awarded upon the Connecticut property are not chargeable against the general estate. The legal fees are chargeable in part, that is, to the extent that they were necessary to prove the will in the ancillary jurisdiction. The probate fees in connection with the proving of the will are chargeable against the estate. The debts owed by the decedent at the time of her death are, of course, chargeable against the general estate. Disbursements for the operation and maintenance of the realty after the death of the decedent are not chargeable to the estate. It is conceded that under the terms of the will all estate taxes are chargeable against the general estate.
Within the general principles herein discussed, the parties will be able to adjust a great part of the figures in dispute. If they are unable to adjust any particular item in dispute, either party may request a hearing on that issue.
In his report the guardian adverts to questions that might arise in the future dependent upon the order in which the deaths of certain persons might occur, but states that he is “ not recommending that there be a decree now construing the will.” The petition does not request any construction of the will. The executors and the guardian discuss in their briefs suggested constructions of the will. However, no such question is properly before the court. A judicial construction of the will would require issuance of process to affected persons and opportunity to be heard. The court accordingly expresses no opinion relative to construing the will.
The compensation of the attorneys for the petitioners is fixed and allowed in the amount requested. The objection to computing paying commissions on the receiving commissions paid on account and confirmed herein, is overruled. The application of the executors for leave to abandon 100 shares of Continental Securities Corp. $5 preferred stock is granted, there being no objection to the allegation that it is worthless. The guardian ad litem agrees that the security is worthless.